Brewster H. Jamieson, ABA No. 8411122
Peter C. Partnow, ABA No. 7206029
Michael B. Baylous, ABA No. 0905022
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone:  (907) 264-3325
            (907) 264-3317
Facsimile:  (907) 276-2631
Email:      JamiesonB@lanepowell.com
            PartnowP@lanepowell.com


Attorneys for Defendant
Premier Oilfield Equipment Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ATIGUN, INC.,<br><br>                        Plaintiff,<br><br>v.<br><br>PREMIER OILFIELD EQUIPMENT COMPANY; TIGER OILFIELD TANK COMPANY, LLC, f/k/a DELTA OILFIELD TANK CO., LLC; HY-TECH TRUCK & TRAILER MANUFACTURING, LLC and GARY HARMS, JR,<br><br>                        Defendants. | Case No. 3:12-cv-00230-SLG<br><br>**DEFENDANT PREMIER OILFIELD EQUIPMENT COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, <u>MOTION TO TRANSFER VENUE</u>** |

Defendant Premier Oilfield Equipment Company ("Premier"), through its counsel of record, hereby submits the following as its Motion to Dismiss or, in the Alternative, to Transfer Venue pursuant to 28 U.S.C. §§ 1391 and 1404, and Fed. R. Civ. P. 9(b), and as grounds therefor states as follows:

## I.  <u>INTRODUCTION</u>

This action arises from plaintiff Atigun, Inc.'s purchase of certain water tanks used for hydraulic fracturing ("fracking") in connection with oil field production.  The tanks, which were purchased in 2010 and 2011, were manufactured by defendant Hy-Tech Truck & Trailer Manufacturing, LLC ("Hy-Tech").  Plaintiff alleges that the tanks were defective and did not

perform as warranted, and that certain misrepresentations were made by defendant Gary Harms, who was an employee of defendants Tiger Oilfield Equipment Company f/k/a Delta Oilfield Tank Co., LLC ("Tiger") and Hy-Tech.

This action should be dismissed as to defendant Premier for lack of personal jurisdiction, as Premier did not exist as a corporate entity at the time the tanks at issue were manufactured and sold to the plaintiff, or when the alleged misrepresentations were made. Premier was formed in 2012 to acquire certain assets of Tiger, Hy-Tech and another corporate entity. Further, this action should be dismissed as to all defendants because there is no substantial relationship with Alaska. The alleged acts or omissions giving rise to this claim occurred in Colorado, where the tanks were manufactured, or North Dakota, where the tanks were delivered. Further, the Second Amended Complaint should be dismissed for failure to properly plead its misrepresentation claim. Finally, venue should be transferred to Colorado, where all of the defendants are located and the majority of the potential witnesses reside, pursuant to 28 U.S.C. §1404.

## II. <u>STATEMENT OF FACTS</u>

### A. <u>The Parties.</u>

Plaintiff is an oilfield equipment rental company with its principal office in Kenai, Alaska. (Second Amended Complaint, ¶ 10). Although Plaintiff's principal office is in Alaska, it conducts business in North Dakota as well. (Second Amended Complaint ¶ 10).

In its Second Amended Complaint, Plaintiff refers to defendants Premier, Tiger and Hy-Tech collectively as "Premier." (Second Amended Complaint, ¶ 5). However, Premier, Tiger and Hy-Tech are separate and distinct corporate entities which cannot simply be lumped together.

### 1. <u>Tiger and Hy-Tech.</u>

Tiger is a Colorado limited liability company originally formed in 2009 as Delta Oilfield Tank Co., LLC ("Delta Tank"). Delta Tank's principal place of business was located in Fort Morgan, Colorado, where it engaged in the manufacture of round oilfield storage tanks, pumps, manifolds and miscellaneous other oilfield equipment. (*See* Affidavit of Gary Harms ("Harms Aff."), ¶ 2, attached hereto as Exhibit A). In 2010, the name of Delta Tank was changed to Tiger. (*Id*. at ¶ 2).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)     **Page 2 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 2 of 20

Hy-Tech is a Colorado limited liability company formed in 2010 to engage in the manufacture of more specialized oilfield equipment, including trailer-mounted tanks. (*Id*. at ¶ 3). Hy-Tech's principal place of business is also in Fort Morgan, Colorado, although it had different ownership and maintains separate manufacturing facilities from those of Tiger. (*Id*.).

All of Tiger and Hy-Tech's operations were located in Colorado, and neither entity had an office or other physical location in Alaska. (*Id*. at ¶ 4). Further, neither Tiger nor Hy-Tech had any employees in Alaska, and to the best of their knowledge, no employee of Tiger or Hy-Tech ever traveled to Alaska. (*Id*.). Neither Tiger nor Hy-Tech solicited business or advertised in Alaska, nor did they sell equipment of any kind for delivery or use in Alaska. (*Id*.).

     **2.**    **Premier.**

Premier was formed in March of 2012 to acquire certain assets of Tiger, Hy-Tech and Pro-Tech. (*See* Affidavit of Ian Dickinson ("Dickinson Aff."), ¶ 2, attached hereto as Exhibit B). Premier is a Delaware corporation with its principal place of business in Fort Morgan, Colorado. (*Id*. at ¶ 4). Although Premier is engaged in the manufacture and sale of oilfield equipment, it has different managers, different shareholders and directors than the three companies whose assets it acquired. (*Id*. at ¶ 3).

Like Tiger and Hy-Tech, all of Premier's business operations and employees are located in Colorado. (*Id*. at ¶¶ 4-5). Premier has no employees in Alaska, and conducts no business in Alaska. *Id*. Premier does not solicit business in Alaska nor does it advertise to any potential customers in Alaska. *Id*. Since its formation, Premier has never sold any equipment to an Alaska entity or for use in Alaska. *Id*.

**B.**    **The Transactions at Issue.**

This action arises from Plaintiff's purchase of water tanks to be used in connection with hydraulic fracturing of oilfields. (Second Amended Complaint, ¶ 11). These tanks were purchased in 2010 and 2011, prior to Premier's acquisition of certain assets from Tiger and Hy-Tech, and indeed before Premier was even formed as a corporate entity. (Second Amended Complaint, ¶ 11). All of the trailer-mounted tanks at issue were manufactured in Colorado by Hy-Tech, as Tiger was engaged in the manufacture of round, stationary oilfield tanks and other equipment. (Harms Aff., ¶ 5).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)**    **Page 3 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 3 of 20

In or about early 2010, Plaintiff's president, Mike O'Toole, contacted Gary Harms of Hy-Tech to inquire whether Hy-Tech could construct trailer-mounted fracking tanks meeting certain standards for use in Alaska. Hy-Tech had never dealt with the Plaintiff or Mr. O'Toole in the past, and is unaware of how Mr. O'Toole obtained Hy-Tech's contact information. (*Id.* at ¶ 6). Mr. Harms informed Mr. O'Toole that he had recently investigated the standards for fracking tanks in Alaska for another potential customer requesting same, and had found that the specifications were not well-defined. However, based on the standards that were known, Mr. Harms informed Mr. O'Toole that Hy-Tech could not manufacture equipment to those specifications. Among other things, the metal required for the extreme weather conditions in Alaska required special heat treating, and Hy-Tech did not have the required equipment. To meet those standards, the cost per tank would have been approximately $90,000 per unit, or three times the cost of the standard tanks manufactured by Hy-Tech. Mr. Harms further informed Mr. O'Toole that Hy-Tech only manufactured its equipment to standards acceptable for use in the lower 48 states. (*Id.* at ¶ 7).

After Hy-Tech declined Plaintiff's inquiry about supplying fracking tanks for use in Alaska, Mr. O'Toole informed Mr. Harms that Plaintiff was setting up an operation in North Dakota, and that its employee, Jerry Olson, would be contacting Hy-Tech about tanks for use in North Dakota. (*Id.* at ¶ 8). Subsequently, Mr. Olson did contact Hy-Tech about purchasing tanks for use in North Dakota, and all subsequent communications between the Plaintiff and Hy-Tech were with Plaintiff's employees in North Dakota. (*Id.* at ¶ 8).

Ultimately, Plaintiff purchased a total of 158[1] trailer-mounted fracking tanks from Hy-tech between 2010 and 2011. All of these tanks were manufactured at Hy-Tech's facilities in Fort Morgan, Colorado. All of the tanks at issue were delivered to Hy-Tech in North Dakota. (*Id.* at ¶ 9). Hy-Tech believed that these tanks would be used by Plaintiff's leasing customers in North Dakota, and had no reason to believe that any of these tanks would be transported to or used in Alaska. Indeed, Plaintiff had specifically been informed that Hy-Tech's tanks could not meet the known specifications required for use in Alaska. (*Id.* at ¶ 10).

---

[1] Plaintiff alleges that it purchased 180 tanks, but Hy-Tech's records reflect the purchase of only 158. (Harms Aff., ¶ 9).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)     **Page 4 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 4 of 20

In February of 2012, Jerry Olson of Atigun contacted Hy-Tech regarding the alleged failure of coatings on certain tanks in North Dakota. The first time that any of the Defendants were aware that any of the tanks supplied to the Plaintiff had been taken to Alaska was in mid-2012, after Premier had acquired the assets of Tiger and Hy-Tech, when Plaintiff contacted Mr. Harms and informed him that a tank in Kenai, Alaska had failed an inspection in Alaska. (Harms Aff., ¶ 11). Upon information and belief, Plaintiff took only one of the tanks supplied by Hy-Tech to Alaska, and that tank was never put into use in Alaska. (*Id*. at ¶ 11).

C.     **Plaintiff's Claims.**

Plaintiff commenced this action in the Superior Court for the Third Judicial District at Kenai on July 24, 2012. The complaint was amended on two separate occasions before it was served on the defendants. In its Second Amended Complaint, Plaintiff asserts that it was warranted that the tanks would meet certain industry standards, particularly welding and coating standards, and would be fit for service in Alaska and North Dakota. (Second Amended Complaint ¶ 14). After the receipt of the tanks, Plaintiff alleges they were put to work in North Dakota. Subsequently, Plaintiff's personnel noticed rust, missing welds and other exterior indicia of defects in the construction of the tanks. (Second Amended Complaint ¶ 16). Plaintiff asserts that defects in the construction of the tanks renders them unfit for use as fracking or oilfield tanks. (Second Amended Complaint ¶ 18).

Based on these allegations, Plaintiff has asserted claims for breach of contract, breach of warranty, breach of the implied covenant of good faith and fair dealing, rescission, misrepresentation and unfair trade practices in violation of Ak. Stat. § 45.50.471(a). (*See* generally, Second Amended Complaint).

### III. ARGUMENT

A.     **This Action Should Be Dismissed as to Defendant Premier for Lack of Personal Jurisdiction.**

A federal court cannot rule on the merits of a case unless it first establishes that it has subject matter jurisdiction, as well as personal jurisdiction over the defendants. *See, e.g, Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431-32 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 5 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 5 of 20

jurisdiction over the defendant. However, in the absence of a hearing, this showing requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.' Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true. The court resolves all disputed facts in favor of the plaintiff." *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) (internal quotations retained, internal citations omitted).

Where no federal statute governs personal jurisdiction, the federal court applies the law of the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988). Alaska's "Long Arm" Statute, Ak. Stat. § 09.05.015, allows courts to exercise personal jurisdiction over defendants to the extent allowed by the due process clause of the Fourteenth Amendment to the United States Constitution. *Volkswagenwerk A.G. v. Klippan, GmbH*, 611 P.2d 498, 500 (Ak. 1980). Personal jurisdiction may only be exercised over a defendant who is not a resident of the forum district under the Due Process Clause if there are sufficient "minimum contacts" by the defendant with the forum state so as not to offend traditional notions of fair play and substantial justice. *See, e.g., Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945). This is because to exercise personal jurisdiction over a non-resident of the forum is to subject such defendant to the state's coercive power, and so must comport with due process and historic notions of fundamental fairness. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2850 (U.S. 2011).

The Court may consider affidavits and other extrinsic evidence in determining whether the exercise of personal jurisdiction is proper. "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit," but we resolve factual disputes in the plaintiff's favor[.]" *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotations retained, citations omitted).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 6 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 6 of 20

1.    **There is no basis upon which the Court could exercise general personal jurisdiction over premier.**

Personal jurisdiction can be either general or specific.  For general personal jurisdiction, the defendant's contacts must be so "substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum."  *Menken v. Emm*, 503 F.3d 1050, 1056-57 (9th Cir. 2007).  "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, [the 9th Circuit Court of Appeals] consider[s] their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'  The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'"  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (internal quotations retained, citations omitted).  Relevant considerations are whether the defendant maintains an office in the state, is registered to do business there, has a registered agent for service of process in the state, or pays taxes to the forum state.  *Id*. (citing *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2852).

Here, there is no "substantial, continuous, and systematic" contact between Premier and Alaska.  Premier was formed as a Delaware corporation in March 2012.  (Dickinson Aff., ¶¶ 2, 4).  The assets it acquired from Tiger, Hy-Tech and Pro-Tech were all located in Colorado, and all of Premier's business operations are located in Colorado.  (*Id*. at ¶¶ 2-6).  All of Premier's employees are in Colorado, and it conducts no business in Alaska.  Premier does not advertise or solicit any business in Alaska, nor has it ever sold any equipment to an Alaska entity or for use in Alaska.  (*Id*. at ¶ 5).  Premier has no registered Agent in Alaska and pays no taxes in Alaska.  (*Id*. at ¶ 6).  Under these circumstances, Premier lacks any contact with Alaska that would justify the exercise of general personal jurisdiction.  *Panavision*, 141 F.3d at 1320 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).  Accordingly, due process requires that the action be dismissed with respect to Premier for lack of personal jurisdiction.  *AcademyOne, Inc.*, 653 F.3d at 1074.

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)**            **Page 7 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 7 of 20

2.      **There is no basis upon which the Court could exercise specific personal jurisdiction over Premier.**

Unlike general personal jurisdiction, which focuses on the *defendant's* relationship to the forum, specific personal jurisdiction is based on the relationship between the *claims* at issue and a defendant's forum-related contacts. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). The Ninth Circuit Court of Appeals has described a three-part test for the exercise of specific personal jurisdiction as follows:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Panavision Int'l, L.P.*, 141 F.3d at 1320 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995)). "'The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.' On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, 'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'" *Menken*, 503 F.3d at 1057 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Under the facts here, Plaintiff cannot meet each of the first two prongs of the test, thereby requiring dismissal for want of personal jurisdiction.

### a.      Insufficient "minimum contacts" exist to justify the exercise of specific personal jurisdiction.

The "purposeful availment" requirement protects a defendant from being haled into court based upon "random, fortuitous or attenuated" contacts with the forum state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In order to establish "purposeful availment," in a contract case, "[courts] typically inquire [as to] whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 119, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802)). For tort cases, "[courts] typically

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)**           **Page 8 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 8 of 20

inquire whether a defendant 'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."  *Id*. (quoting *Schwarzenegger*, 374 F.3d at 803)).

### (1) The transaction at issue was directed to North Dakota, not Alaska.

As discussed more fully above, the tanks at issue were sold by Hy-Tech to the Plaintiff for use in North Dakota, not Alaska.  The discussions concerning the sale of the subject tanks were between Hy-Tech's employees in Colorado and Plaintiff's employees in North Dakota.  Moreover, all of the tanks were manufactured in Colorado and delivered to the Plaintiff in North Dakota.  Defendants had no reason to believe that the tanks would ultimately find their way to Alaska, as Hy-Tech specifically informed the Plaintiff that it could not manufacture fracking tanks to the specifications required in Alaska.  Indeed, it appears that only one of the tanks at issue was ever taken to Alaska (which Defendants discovered only after the fact), and it does not appear that that tank was ever put into service.

The only connection between Alaska and the transaction at issue is the fact that Plaintiff unilaterally brought one of the tanks it acquired from Hy-Tech to Alaska.  This type of unilateral action by a defendant cannot form the basis of purposeful availment so as to support specific personal jurisdiction.  *See Burger King Corp.*, 471 U.S. at 475.  For example, in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980), the Court determined an automobile purchaser's unilateral action in taking the car to Oklahoma was insufficient to afford Oklahoma personal jurisdiction over the distributor.  Similarly, in *Kulko v. Cal. Super. Court*, 436 U.S. 84, 93-94 (1978), the Court held that a former spouse's unilateral decision to move to another state was insufficient to afford personal jurisdiction in a suit for child support.  Under the circumstances presented here, there is no basis to conclude that the Defendants, or any of them, purposefully availed themselves of Alaska law in connection with the subject transaction.

### (2) Premier had no contact with Alaska in connection with the transaction at issue.

Here, Premier had no contact with Alaska of any kind in connection with the transaction at issue, as Premier was not formed until *after* Plaintiff purchased the tanks at issue from Hy-Tech, and *after* the alleged misrepresentations were made.  In an apparent effort to circumvent

Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          Page 9 of 20

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 9 of 20

this issue, Plaintiff avers simply that Premier is a "successor in interest and/or an entity related to Tiger," and that "[o]n information and belief, Tiger, Hy-Tech, and Premier operate and share employees in such a way that they are a *de facto* single entity." SAC at ¶¶ 4-5. After making these two conclusory assertions, however, Plaintiff simply refers to all three entities as "Premier." *Id*. at ¶ 5. The SAC is, however, devoid of any factual basis for the claim of successor liability. Plaintiff's conclusory legal assertions in the SAC need not be credited as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).

Generally, a corporation that acquires the assets of another corporation does not become liable for its debts. A corporation acquiring the assets of another is liable if only one of the following exceptions applies: (1) the successor expressly or impliedly assumes liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the successor is a mere continuation of the seller; or (4) the transfer is for the fraudulent purpose of escaping liability. *Board of County Com'ns of County of Park v. Park County Sportsmen's Ranch, LLP*, 271 P.3d 562, 572 (Colo. App. 2011); *see also Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.*, 837 P.2d. 283 (Colo. App. 1992).[2] Here, the only exception to the general rule that Plaintiff arguably avers is the "mere continuation" exception. *See* Second Amended Complaint, ¶ 5 ("[The corporate defendants] operate and share employees in such a way that they are a *de facto* single entity."). Besides failing for lack of any factual support, the mere continuation exception fails as a matter of law as well. As explained in *CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90 (Colo. App. 2005):

> The mere continuation exception applies when there is a <u>continuation of directors, management, and shareholder interest and, in some cases, inadequate consideration</u>. *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc., supra,* 837 P.2d at 283; *see Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir. 1985) (purchasing corporation is merely a "new hat" for the seller, with the same or

---

[2] Because Tiger, Hy-Tech and Pro-Tech were all located in Colorado, and Premier has its principal place of business in Colorado, Colorado has the most significant relationship to the question of successor liability and, therefore, that issue should be addressed under Colorado law. Rest. 2d. Conflicts of Laws § 188; Rest. 2d Conflicts of Laws § 6(2); *see also Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 432-33 n.8 (Alaska 2001) (citing and applying Rest. 2d Conflicts of Laws §§ 188 and 6(2) in dispute regarding choice of law in determining force and effect of contractual limitation on statute of limitations for bringing claims against cruise line).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 10 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 10 of 20

similar management and ownership). Accordingly, <u>the test</u> for this exception <u>is whether the purchasing corporation is</u>, in effect, <u>a continuation of the selling corporation, and not whether there is a continuation of the seller's business operation</u>. *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc., supra.*

*CMCB Enters., Inc.*, 114 P.3d at 93 (citations retained) (emphasis added).

Here, Premier was formed to operate an oilfield equipment company created from the assets of three different corporations—Tiger, Hy-Tech and Pro-Tech. Premier has entirely new management and directors, and a majority of its shareholders are new. (Dickinson Aff., ¶ 3). Although Premier manufactures oilfield equipment, it does not manufacture the trailer-mounted fracking tanks of type that were sold to the plaintiff and are the subject of this action. (*Id*.). The fact that Premier has continued to operate in the same general industry as the companies whose assets it acquired is not dispositive on the issue of successor liability. *CMCB Enters., Inc.*, 114 P.3d at 93. As such, even if a claim for mere continuation successor liability were properly averred in the SAC—which it was not—the assertion would nonetheless fail as a matter of law.

Based upon the foregoing, this action should be dismissed in its entirety as to Premier for lack of personal jurisdiction.

### b. The transaction at issue did not arise from forum-related activities.

The second prong of the *Omeluk* test requires that the claims arise from a defendant's forum-related activities. 52 F.3d at 270. "[T]he Ninth Circuit follows the 'but for' test." *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1075 (9th Cir. 2001). Hence, [Atigun] must show that [it] would not have suffered an injury "but for" [Defendants'] forum-related conduct." *Menken*, 503 F.3d at 1058 (internal citation retained). Here again, Premier did not exist at the time of the acts giving rise to the plaintiff's claims, and therefore they could not have resulted from *Premier's* forum-related activities.

Plaintiff sought out Hy-Tech regarding the transaction at issue; Hy-Tech did not advertise its products in Alaska. Plaintiff was specifically informed by Gary Harms that the tanks at issue were not constructed for Alaska specifications. (Harms Aff., ¶ 7). All of the tanks at issue were manufactured in Colorado, and were delivered to the Plaintiff in North Dakota, not Alaska. Despite being informed the tanks would not be built to Alaska specifications, Plaintiff apparently brought one or more tanks to Alaska and now claims they are defective. (*Id*. at ¶ 11).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG) **Page 11 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 11 of 20

Here, the only connection between Hy-Tech and Alaska was the preliminary discussions between Gary Harms and Mike O'Toole regarding the possibility of supplying tanks for use in Alaska, which Hy-Tech declined to produce. As discussed above, the tanks at issue were manufactured in Colorado for use in North Dakota, where the tanks were delivered, and all discussions regarding these tanks took place between Hy-Tech's employees in Colorado and Plaintiff's employees in North Dakota. Even if some of the negotiations had involved Plaintiff's employees in Alaska, merely negotiating with a contracting party in another state does not, in itself, establish purposeful availment so as to satisfy that prong of the specific jurisdiction test. As was explained in *Peterson v. Kennedy*, 771 F.2d 1244, 1246 (9th Cir. 1985) "use of the mails, telephone or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *See also, e.g., Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). In *Burger King*, the Court explained:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Burger King,* 471 U.S. at 478-79 (citations omitted).

Here, Defendants did not seek out Plaintiff in Alaska, did not consummate the contract in Alaska, there are no terms of the contract implicating Alaska or its laws, with the only relationship being the Defendants' good faith negotiations with a prospective purchaser who happened to be domiciled in Alaska. These negotiations are insufficient to establish a purposeful availment. Any contact with Alaska was entirely unilateral on the part of the Plaintiff, and so the claims cannot arise out of or result from Defendants' forum-related activities and the second prong fails.

### c. It would be manifestly unreasonable to exercise personal jurisdiction over Premier under the circumstances of this case.

"[Courts] consider the following seven factors when making [the "reasonableness"] determination: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)     **Page 12 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 12 of 20

the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *CE Distrib., LLC v. New Sensor Corp.,* 380 F.3d 1107, 1112 (9th Cir. 2004).

Because the Plaintiff cannot establish the first two prongs of the *Omeluk* test, the burden does not shift to the Defendants to make a "compelling case" that the exercise of specific personal jurisdiction would be unreasonable. *Menken,* 503 F.3d at 1057. Regardless, regarding this last prong, in analyzing the seven factors, it would be unreasonable to require Premier to litigate this dispute in Alaska, where the relationship between Alaska and the parties and transaction is so tenuous, fortuitous and largely the result of unilateral conduct by the Plaintiff.

The majority of the seven factors weigh in favor of declining personal jurisdiction. With respect to the first factor, as the Defendants did nothing to interject into Alaska's affairs, the Plaintiff sought out Defendant Hy-Tech, and the Defendants did not seek out or attempt to sell equipment for use in Alaska. The tanks at issue were all intended for use in North Dakota. Thus, this factor weighs in favor of the Defendants.

The second factor also weighs overwhelmingly in favor of Defendants, as to force them to travel to Alaska and defend the action away from the situs of their business would constitute a considerable and unreasonable burden, both in terms of time and expense. While courts recognize it is less burdensome today to defend an action in a foreign jurisdiction than in times past, it remains a significant consideration. *CE Dist., LLC,* 380 F.3d at 1112.

The third factor favors the Defendants, as exercising jurisdiction over Colorado entities who do not conduct business in Alaska would unnecessarily subject those entities to regulation in a foreign jurisdiction.

The fifth factor weighs in favor of Defendants, as the majority of the witnesses and documents related to the action will be in Colorado, and not Alaska. Specifically, all of Defendants' employees who were involved in the transaction at issue are in Colorado, where the agreement to purchase the tanks was negotiated and the tanks were manufactured. The burden and cost to require the Defendants to litigate the matter in Alaska would be significant, onerous and oppressive. *See Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 953 (9th Cir. 1968). Although the Plaintiff may assert that the forum is important to its own convenience, courts have

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)** **Page 13 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 13 of 20

noted that this factor is not of paramount importance. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003).

The final factor additionally favors the Defendants, as Colorado is an adequate alternative forum to litigate the issues presented. Plaintiff bears the burden of establishing no other forum is available for relief. *Menken*, 503 F.3d at 1061 (citing *Core-Vent Corp v. Nobel Ind. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993)). Accordingly, because the majority of the factors identified by the Ninth Circuit militate against the exercise of personal jurisdiction over the Defendants[3], this action should be dismissed.

## B. This Action Should be Dismissed for Improper Venue Under 28 U.S.C. § 1391.

Venue for diversity cases is provided for at 28 U.S.C. § 1391(a), which provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Under 28 U.S.C. § 1406(a), if Alaska is not the proper venue, the Court should either dismiss the action, or, in the interests of justice, transfer the action to Colorado. *See* 28 U.S.C. § 1406(a). Affidavits can be considered on a motion to dismiss or to transfer. *See, e.g., Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 n.1 (9th Cir. 1967) (considering affidavit for purposes of residence in Section 1391(a) and Section 1406(a) motion context). The purpose of requiring proper venue is to protect defendants from unfair or inconvenient trial locals. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979).

Here, none of the defendants resides in Alaska. Further, each of the defendants would be subject to personal jurisdiction in Colorado, where Premier, Hy-Tech and Tiger maintain their principal offices, and where Gary Harms is a resident. Thus, the first and third factors of 28 U.S.C. § 1391(a) do not support venue in Alaska. Accordingly, venue is proper only if "a substantial part of the events or omissions giving rise to the claim occurred" in Alaska.

---

[3] Defendants do not dispute that Alaska has a substantial interest in affording its residents a forum to redress claimed wrongs, which is the fourth factor identified by the Ninth Circuit.

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)** **Page 14 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 14 of 20

A "substantial part" does not require the majority of the events, or even that the forum events predominate, but it does require at least that some of the events forming the basis of the plaintiff's complaint must have occurred in the forum state. *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2nd Cir. 1992)). For tort claims at least, the locus of the injury is a relevant factor to determine whether a substantial part of the events giving rise to the suit occurred in the forum encompassing the venue where the suit was filed. *Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (holding that because at least one of the harms suffered by the plaintiff in an action akin to a claim for invasion of privacy occurred in the forum, venue was good). This is true even if the injury sustained is purely economic. *Fiore v. Walden*, 688 F.3d 558, 587-88 (9th Cir. 2012).

Here, few if any of the events giving rise to the Plaintiff's claims occurred in Alaska. The Plaintiff initially reached out to Hy-Tech in Colorado and inquired about its products. As noted above, the only contact with Alaska were preliminary telephone calls between Gary Harms of Hy-Tech (in Colorado) and Mike O'Toole of the Plaintiff (in Alaska). The discussions concerning the sale of the tanks were primarily between Gary Harm and Jerry Olson, who worked for the Plaintiff in North Dakota. The resulting contracts were entered into in Colorado, the tanks were manufactured in Colorado, the Defendants are domiciled in Colorado, and the delivery of the tanks was in North Dakota.

While Plaintiff is alleged to have suffered financial injury in Alaska, the alleged failure of the tanks occurred in North Dakota—only one of the tanks Plaintiff purchased from Hy-Tech found its way to Alaska, and it does not appear that this tank was ever put into service. This case is predominantly a breach of contract case (four of the six claims asserted in the SAC sound in contract), and so this limited ground for venue in tort cases should not be applied here so as to require the Defendants to defend in Alaska. Therefore, the "substantial part" test fails, and venue is improper in this Court under 28 U.S.C. § 1391(a). Accordingly, the action should be either dismissed or transferred to the United States District Court for the District of Colorado under 28 U.S.C. § 1406(a), and without regard to whether personal jurisdiction exists. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (explaining that venue can be improper and transfer appropriate under Section 1406(a) even if a court has personal jurisdiction over the defendants).

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 15 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 15 of 20

## C. Plaintiff's Misrepresentation Claim Should be Dismissed for Failure to Plead With Particularity.

Misrepresentation claims fall under the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See, e.g., Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993). Under Rule 9(b), a party bringing a claim of fraud or misrepresentation must "state with particularity the circumstances constituting fraud . . . ." *See* Fed. R. Civ. P. 9(b).

> "[A] pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' [This would include] the time, place and nature of the alleged fraudulent activities [or statements] . . . ."

*Semegen v. Weidner*, 780 F.3d 727, 735 (9th Cir. 1985).

Here, Plaintiff failed to meet this standard and simply avers that at an undisclosed time and place, it was provided an unidentified booklet that allegedly contained a representation that the tanks were built to unidentified industry specification. SAC at ¶ 37. The SAC further asserts that at an undisclosed time and place during negotiations, Mr. Harms and other unidentified employees represented on several undisclosed occasions that the tanks were built to undisclosed specifications. *Id.* at ¶ 38. As such, these general averments of misrepresentation lack in sufficient detail, and, therefore, do not comport with Rule 9(b)'s pleading standards. Therefore the misrepresentation claim should be dismissed.

## D. In the Alternative, Venue Should be Transferred to Colorado Pursuant to 28 U.S.C. § 1404(a).

If the Court determines it has personal jurisdiction over some or all the Defendants or otherwise declines to dismiss this action, the action should be transferred to the United States District Court for the District of Colorado under 28 U.S.C. § 1404(a). In assessing motions under Section 1404(a):

> [T]he district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 16 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 16 of 20

forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "A defendant invoking *forum non conveniens* [under Section 1404(a)] bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co., Ltd.*, 549 U.S. at 430. Even despite this burden, as applied here, the relevant factors nonetheless militate decidedly for transfer to Colorado.

### 1.    The Location Where the Relevant Agreements Were Negotiated and Executed.

Regarding the first factor, the Plaintiff sought out Defendant Hy-Tech and Tiger in Colorado. Importantly, Defendants did not target Alaska or the Plaintiff with their products. On its own, the Plaintiff learned about and contacted Defendants and inquired about their products. Negotiations between the parties occurred over the phone and email, with Defendants acting exclusively in Colorado, and with the vast majority of Plaintiff's negotiations occurring from its location in North Dakota. There was no formal written contract to be executed, but Purchase Orders were received and acknowledged in Colorado, bills of lading originated in Colorado for the delivery of the tanks in North Dakota, and receipt acknowledgments were executed by Plaintiff in North Dakota when the tanks arrived. In short, almost none of the contract formation activity occurred in Alaska, and, that which did, was limited unilateral action on the part of the Plaintiff. *See, e.g., Samson Tug and Barge Co., Inc.*, ___ F. Supp. 2d __, 2012 WL 1405718 * 11 (D. Alaska April 23, 2012) (providing that even where one party signs contract in Alaska, if claimed misrepresentations were made in another state, the factor favors transfer to such state wherein the alleged misrepresentations were made). Therefore, this factor favors transfer to Colorado.

### 2.    The State That Is Most Familiar With the Governing Law.

Regarding the second factor, where various states' laws will be examined to resolve different aspects of a case—and despite the presumption that the state law of the transferring court will apply in a diversity action and that the transfer is simply a "change of courtrooms"—the factor becomes neutral. *Samson Tug and Barge Co., Inc.*, 2012 WL 1405718 at * 11. Here, Alaska law may inform the misrepresentation claim, however, Colorado law will apply to the

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)                    Page 17 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 17 of 20

breach of contract issues, as the state with the most significant relationship to the contract claims. Therefore, this factor is neutral.

### 3. The Plaintiff's Choice of Forum.

While the Plaintiff has chosen to litigate in Alaska, this factor is to be given limited weight here, where there is so little relationship between the collective parties as a whole and Alaska, and no relationship between Alaska and the claims at issue. *See, e.g., Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

### 4. The Respective Parties' Contacts With the Forum.

The fourth factor weighs heavily in favor of transfer, based upon the majority of the parties' minimal contacts with Alaska. Only the Plaintiff has any meaningful contact with Alaska. Where the defendants' contacts with the forum state relate just to the contract's negotiation, the factor can be tipped in favor of transfer, especially where the plaintiff has significant contacts with the transferee forum. *See Samson Tug and Barge Co., Inc.*, 2012 WL 1405718 at * 11. In Samson the court determined the factor slightly favored Alaska, but noted that the plaintiff had very little contacts with the suggested transferee state. *Id*. Here, on the other hand, the Plaintiff reached out to Defendants in Colorado and sought out their business, engaged in significant discussions regarding the tanks, submitted purchase orders, transmitted funds to Colorado and otherwise availed themselves of the benefits of doing business in Colorado with Colorado companies. Hence, and because of Plaintiff's significant contacts with Colorado, this factor slightly favors Colorado.

### 5. The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum.

There is little connection between the Plaintiff's claims and Alaska. As noted above, all of the tanks at issue were manufactured in Colorado and delivered to the Plaintiff in North Dakota. The failures of the tanks were first reported to have occurred in North Dakota. Of the 158 tanks Hy-Tech sold to the Plaintiff, only one ever appears to have made its way to Alaska, and that was apparently the result of the Plaintiff's unilateral action despite having been informed that the tanks were not manufactured to Alaska specifications. Thus, there is little

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 18 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 18 of 20

connection between Alaska and the Plaintiff's claims, which primarily involve alleged breaches of warranty and misrepresentations concerning products delivered to another state. Thus, this factor weighs heavily in favor of transfer. *See, e.g., Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,* 556 F.2d 975, 977-78 (9th Cir. 1977) (plaintiff failed to establish relationship between misrepresentation claims and Arizona where all the transactions between parties were in Mexico and the claim arose in Mexico and so trial court did not abuse discretion in dismissing for *forum non conveniens* grounds).

6. <u>The Differences in the Costs of Litigation in the Two Forums.</u>

Where the burden of litigating in a foreign state would be borne by one party or another, the factor is neutral. *Samson, supra,* at * 12. However, where one side of the action has multiple parties, and the other has just one, economy dictates that the burden is not shared equally. Therefore, this factor likewise favors transfer to Colorado, where just one party would be burdened instead of four.

7. <u>The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses.</u>

The seventh factor weighs in favor of transfer as well, because the majority of the witnesses will be in Colorado, and, if transfer is denied, compulsory attendance in Alaska will not be available. Further, with respect to Defendants' employee witnesses—who would predominate any trial—they would be required to travel to Alaska. Where numerous witnesses and employees are required to travel long distances for trial, this factor can aid in establishing a strong showing of inconvenience. *See Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 953 (9th Cir. 1968) (recognizing a strong showing made where, *inter alia,* numerous witnesses including corporate staff would be required to travel to Hawaii from the mainland to give testimony).

8. <u>The Ease of Access to Sources of Proof.</u>

This factor also weighs in favor of transfer, as the majority of the documents, witnesses and relevant evidence will be in Colorado. *See Pacific Car & Foundry Co. v.*, 403 F.2d at 953 (where voluminous documents relevant to case are in another jurisdiction, this can weigh in favor of transfer). Defendants should not be required to disrupt their corporate operations to send witnesses and any relevant documents to Alaska, especially where Alaska's relationship to

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* (Case No. 3:12-cv-00230-SLG)          **Page 19 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 19 of 20

the claims and parties is so limited. *See id*. at 954 ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

**9.** **Forum Selection Clause.**

Here, there is no forum selection clause at issue, and so the factor is not relevant.

**10.** **Public Policy of Forum State.**

Alaska has a strong public policy in favor of protecting its citizens from misrepresentation, *Samson*, *supra*, at * 12; however, here, the case is predominantly a contract action (4 of 6 claims sounding in contract), and so Colorado has a competing interest in affording its citizens an efficient and convenient forum for resolution of disputes associated with contracts formed in Colorado. *See Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 346 (Colo. 1998) (citing Colo. Const., Art. II, Sect. 6).

Accordingly, based upon the weighing of the appropriate factors, a strong showing has been made and transfer under Section 1404(a) is warranted if the Court determines dismissal is not appropriate.

## IV. CONCLUSION

Based upon the foregoing, the Action should be dismissed. If the Court denies such relief, the Action should be transferred to the United States District Court for the District of Colorado. Finally, if the Court denies transfer, the Plaintiff's misrepresentation claim should be dismissed for failure to plead with sufficient particularity.

DATED this 21st day of December, 2012.

LANE POWELL LLC
Attorneys for Defendant Premier Oilfield
Equipment Company


By  s/  Peter C. Partnow
   Peter C. Partnow, ABA 7206029
   Michael B. Baylous, ABA No. 0905022

I certify that on December 21, 2012, a copy
of the foregoing was served electronically on:

Bruce A. Moore, brucem@lbblawyers.com
Robert H. Schmidt, robs@lbblawyers.com
William m. Wuestenfeld, bill@swclaw.com

  s/ Peter C. Partnow

127060.0001/5533070.1

**Defendant Premier Oilfield Equipment Co.'s Motion to Dismiss or, in Alternative, Motion to Transfer Venue**
*Atigun v. Premier Oilfield Equipment Co., et al.* **(Case No. 3:12-cv-00230-SLG)** **Page 20 of 20**

Case 3:12-cv-00230-SLG   Document 14   Filed 12/21/12   Page 20 of 20