William M. Wuestenfeld
WUESTENFELD & COREY, LLC
701 W. 8th Avenue, Suite 1100
Anchorage, AK 99501
Telephone:(907) 276-6363
Facsimile: (907) 276-3528
Email:      bill@swclaw.com

Attorneys for Defendants Gary Harms Jr.,
Tiger Oilfield Tank Comapany, LLC,
f/k/a Delta Oilfield Tank Co., LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANTIGUN, INC.<br><br>             Plaintiff,<br><br>   v.<br><br>PREMIER OILFIELD EQUIPMENT COMPANY; TIGER OILFIELD TANK COMPANY, LLC f/k/a DELTA OILFIELD TANK CO., LLC; HY-TECH TRUCK & TRAILER MANUFACTUREING, LLC and GARY HARMS, JR.<br><br>             Defendants. | Case No. 3:12-cv-00230-SLG<br><br><br>**MOTION AND MEMORANDUM IN SUPPORT OF DISMISSAL, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |

COME NOW Defendants Tiger Oilfield Tank Company, LLC ("Tiger"), Hy-Tech

Truck & Trailer Manufacturing, LLC ("Hy-Tech") and Gary Harms, Jr. ("Mr. Harms")

(collectively at times referred to herein as "Harms Defendants") and pursuant to Federal

Rules of Civil Procedure 7, 9 and 12, hereby bring this Motion to Dismiss, or, in the

Alternative, to Transfer Venue pursuant to 28 U.S.C. §§ 1391 and 1404.

# INTRODUCTION

Plaintiff Atigun, Inc. ("Atigun"), an Alaska corporation, has filed suit against Premier Oilfield Equipment Company ("Premier") and the Harms Defendants, all of which conduct their entire operations and business functions in Colorado. Atigun's claims are based on allegations regarding the manufacture of trailer mounted water tanks ("fracking tanks") used in the oil and gas industry for hydraulic fracturing. Atigun alleges that the fracking tanks were not manufactured properly, and also alleges that certain misrepresentations were made about the capabilities of the fracking tanks.

This case should be dismissed because all of the conduct alleged in Atigun's Second Amended Complaint took place in Colorado and/or North Dakota. The fracking tanks were manufactured in Colorado, any and all representations made regarding the fracking tanks were made in Colorado, the fracking tanks were manufactured for use in North Dakota, the fracking tanks were shipped to North Dakota, for use in North Dakota, and all business relations were between defendants located in Colorado and Atigun's North Dakota location. There simply is no substantial relationship between the allegations contained in Atigun's Complaint and the State of Alaska. As a result, this Court lacks jurisdiction to properly hear this matter, and pursuant to Federal Rule of Civil Procedure 12 should dismiss this case.

Additionally, Atigun has failed to plead its cause of action for fraud in accordance with the requirements of Federal Rule of Civil Procedure 9. Atigun's allegations are

completely devoid of any specificity or particularity, making it difficult, if not impossible, for the Harms Defendants to adequately respond to Atigun's allegations.

Finally, if in the event this Court determines jurisdiction exists, this case should be transferred to a more appropriate venue pursuant to 28 U.S.C. §§ 1391 and 1404 inasmuch as none of the defendants are located in Alaska, none of the events alleged took place in Alaska, and the vast majority of the witnesses who would testify in this action are located in either Colorado or North Dakota.

## STATEMENT OF FACTS

1. Atigun is an Alaska corporation engaged in the business of renting oilfield equipment with operations in both Alaska and North Dakota. *See* Second Amended Complaint, ¶10.

2. Tiger, formerly known as Delta Oilfield Tank Company, LLC, is a Colorado limited liability company formerly involved in the oil and gas industry. *See* Second Amended Complaint, ¶2.

3. Tiger's principal place of business was located in Fort Morgan, Colorado, where it manufactured round oilfield storage tanks, pumps, manifolds, and miscellaneous other oilfield equipment. Tiger was not engaged in the business of manufacturing fracking tanks. *See* Harms Affidavit, ¶¶ 2 and 5.

4. Hy-Tech is a Colorado limited liability company formerly involved in the oil and gas industry. *See* Second Amended Complaint, ¶3.

5. Hy-Tech was formed in 2012 as a separate entity from Tiger to manufacture more specialized oilfield equipment, including trailer-mounted oilfield equipment, i.e. fracking trailers. Hy-Tech's principal place of business was Fort Morgan, Colorado. *See* Harms Affidavit, ¶3.

6. Mr. Harms is an individual residing in Colorado. *See* Second Amended Complaint, ¶6.

7. Mr. Harms was the CEO of Tiger and Hy-Tech prior to those companies being acquired by Premier. *See* Affidavit of Gary Harms, ¶1, attached hereto as Exhibit 1, ("Harms Affidavit").

8. All of Tiger and Hy-Tech's operations were located in Colorado, and neither entity had an office or other physical location in Alaska. Tiger and Hy-Tech did not have any employees in Alaska, and no employee of Tiger or Hy-Tech ever traveled to Alaska. *See* Harms Affidavit, ¶ 4.

9. Tiger and Hy-Tech never solicited business, nor advertised their services in Alaska. Tiger and Hy-Tech never sold equipment of any kind for delivery or use in Alaska, never had a registered agent in Alaska, and never paid any taxes in Alaska. *See* Harms Affidavit, ¶4.

10. While employed by Hy-Tech Mr. Harms oversaw and was involved in the negotiation and sale of certain fracking tanks to Atigun. These negotiations and sales took place in 2010 and 2011. *See* Harms Affidavit, ¶¶ 1 and 5.

11. In 2011 and 2012 Hy-Tech (not Tiger or Delta) sold approximately 158 fracking trailers to Atigun. All of these fracking trailers were manufactured in Colorado by Hy-Tech. *See* Harms Affidavit, ¶5.

The negotiations leading up to the sale of the 158 fracking trailers is as follows:

12. In early 2010, Atigun's president, Mike O'Toole ("Mr. O'Toole"), contacted Mr. Harms via telephone to inquire about Hy-Tech's ability to manufacture fracking trailers that could meet the demanding specifications and requirements for use in Alaska. *See* Harms Affidavit, ¶6.

13. Prior to the telephone call initiated by Mr. O'Toole Hy-Tech had never dealt with Mr. O'Toole or Atigun. *See* Harms Affidavit, ¶6.

14. During the telephone call with Mr. O'Toole, Mr. Harms informed Mr. O'Toole that Mr. Harms had recently investigated the standards for fracking tanks in Alaska for another customer and had discovered that the specifications for such tanks were not adequately defined. *See* Harms Affidavit, ¶7.

15. Despite the lack of specifications for such tanks, Mr. Harms did know, and informed Mr. O'Toole, that Hy-Tech did not have the manufacturing capabilities to fabricate metal required to withstand the extreme weather conditions in Alaska. Mr. Harms explained that the metal required to be used in Alaska required special heat treating, and that Hy-Tech did not have the required equipment to perform that type of work. *See* Harms Affidavit, ¶7.

16. Mr. Harms further explained that in order to produce fracking tanks with the special metal and required heat treating, that Mr. Harms estimated the cost of such fracking tanks would be approximately $90,000.00 to $120,000.00 per unit. This was three to four times the cost of the tanks manufactured by Hy-Tech. *See* Harms Affidavit, ¶7.

17. Mr. Harms informed Mr. O'Toole that the only specifications that Hy-Tech's fracking trailers were designed and constructed to satisfy were those of the Department of Transportation ("DOT"). *See* Harms Affidavit, ¶7.

18. Mr. O'Toole informed Mr. Harms that Atigun was setting up operations in North Dakota, and another Atigun employee, Jerry Olson ("Mr. Olson"), who would be running the North Dakota operation would contact Hy-Tech about fracking trailers for use in North Dakota. *See* Harms Affidavit, ¶8.

19. Atigun is registered as a foreign business entity in the State of North Dakota. Gerald L. Olson is listed as Atigun's registered agent in North Dakota, with an office located at 4401 42nd ST SE, Minot, North Dakota, 58701-2255. *See* Secretary of State of North Dakota Business Records Search printout attached hereto as Exhibit 2.

20. On information and belief Jerry Olson and Gerald L. Olson are one and the same.

21. Mr. Olson subsequently contacted Mr. Harms to discuss purchasing fracking tanks for use in North Dakota. These fracking tanks were the standard trailers produced by Hy-Tech, and built to the DOT specifications. *See* Harms Affidavit, ¶8.

22. Atigun eventually purchased 158 trailer mounted fracking tanks from Hy-Tech for use in its North Dakota operations. All of these tanks were manufactured at Hy-Tech's facilities in Fort Morgan, Colorado. All of the fracking tanks were delivered to Atigun in North Dakota. *See* Harms Affidavit, ¶9.

23. The fracking tanks manufactured by the defendants were put to work in North Dakota. *See* Second Amended Complaint, ¶16.

24. None of the fracking tanks purchased by Atigun from Hy-Tech were delivered to Alaska, nor were they ever intended for use in Alaska. Hy-Tech built these fracking tanks with the belief they would be used in North Dakota, and had no reason to believe that these tanks would ever be transported to, or used in, Alaska, because Mr. Harms specifically informed Mr. O'Toole that Hy-Tech's tanks could not meet the known specifications for required use in Alaska. Specifically, Hy-Tech did not have the capabilities to properly heat treat the metal. *See* Harms Affidavit, ¶¶ 7 and 10.

25. In February 2012, Mr. Olson, of Atigun, contacted Hy-Tech regarding the alleged failure of coatings on certain tanks in North Dakota. No mention was made of any tanks being taken to, or used in, Alaska. *See* Harms Affidavit, ¶ 11.

26. The first time Mr. Harms heard of any fracking tanks manufactured by Hy-Tech being taken to Alaska was in mid-2012, after Premier acquired the assets of Hy-Tech and Tiger. *See* Harms Affidavit, ¶11.

## ARGUMENT

### I.     This Court Lacks Personal Jurisdiction Over the Harms Defendants.

This Court lacks personal jurisdiction over the Harms Defendants and should dismiss Atigun's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). As explained by the United States Supreme Court, it is a long established tenet of law that, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle,* 74 U.S. 506, 514 (1868)).

If a defendant raises the issue of lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper. If the district court decides the motion without an evidentiary hearing… then 'the plaintiff need only make a prima facia showing of the jurisdictional facts.'" *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008) (internal citations omitted). However, the plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Further, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir. 2006).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Id.* (citing *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316,

1320 (9th Cir. 1998). "Alaska's "long-arm" statute, Ak. Stat. § 09.05.015, grants Alaska courts personal jurisdiction over parties in 'any case… in which the exercise of jurisdiction is permissible under the Fourteenth Amendment.'" *Barlow v. Thompson,* 221 P.3d 998, 1002 (Alaska 2009). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *CollegeSource, Inc. v. AcademyOne, Inc.* 653 F.3d 1066, 1073 (9th Cir. 2011) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"A court may assert either specific or general jurisdiction over a defendant." *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir. 1997) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Neither is present in this action.

### A. This Court lacks specific jurisdiction over the Harms Defendants.

In order to establish specific jurisdiction and satisfy the due process requirements of the 14th Amendment, a defendant "must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co., v. Caddy,* 453 F.3d 1151, 1155 (9th Cir. 2006). The 9th Circuit employs a three-part test in analyzing whether a party's minimum contacts meet the Supreme Court's directives. The three-part test is satisfied if:

> (1) The defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself

of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Id.* (citing *Bancroft & Masters, Inc., v. August Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law. The plaintiff bears the burden of satisfying the first two prongs of the 'minimum contacts' test." *Id.* (citing *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995) and *Schwarzenegger,* 374 F.3d at 802).

### 1) The Harms Defendants have not performed an act to purposefully avail themselves of the privilege of conducting activities in Alaska.

In order to satisfy the first prong of the three-part *Pebble Beach* test Atigun must establish that the Harms Defendants either purposefully availed themselves of the privilege of conducting activities in Alaska, or purposefully directed its activities towards Alaska. Purposeful availment is typically analyzed in a contract case, while purposeful direction is typically analyzed in a tort case. *See Schwarzenegger,* 374 F.3d at 802. Atigun alleges both contract and tort claims, so each subset will be analyzed in turn.

Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* In this case the Harm Defendants took no affirmative action to purposefully avail themselves of the privilege of

doing business in Alaska, and never executed or performed a contract in the State of Alaska.

The allegations set forth in Atigun's Second Amended Complaint, and the facts articulated in the Harms Affidavit, show that any activity associated with Alaska was as a result of Mr. O'Toole reaching out to the Harms Defendants, not the Harms Defendants reaching out to Mr. O'Toole. Since it was Atigun, via the telephone call initiated by Mr. O'Toole, that reached out from Alaska to Colorado there is no allegation or evidence demonstrating that any act performed by the Harms Defendants took place in Alaska. To the contrary, Mr. Harms' affidavit clearly articulates that the only contact with Alaska was initiated by Atigun, and that any additional involvement with Atigun was with the office located in North Dakota. Further, the execution or performance of the contract for the purchase of the estimated 158 fracking tanks took place in Colorado and North Dakota, and had no involvement with Atigun's operations in Alaska.

The United States Supreme Court explained that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros,* 466 U.S. at 417. Since the only connection with Alaska is based on conduct by Atigun, there is no basis to demonstrate that the Harms Defendants purposefully availed themselves of conducting business in Alaska, Atigun has failed to carry its burden of establishing purposeful availment and there is no basis for specific personal jurisdiction.

<u>Purposeful Direction</u>

A purposeful direction analysis is conducted pursuant to the *Calder* effects test which requires that the defendant allegedly: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Foods Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002). The Harms Affidavit demonstrates that these requirements are not satisfied. The Harms Defendants did not commit any act expressly aimed towards Alaska, and Atigun has failed to allege any harm actually occurred in Alaska.

The Harms Defendants never aimed any act towards Alaska – in fact – Mr. Harms specifically informed Atigun that Hy-Tech could not and would not perform any work related to Alaska, particularly the manufacture of fracking tanks. First, Mr. Harms explained that he had recently reviewed the standards for fracking tanks in Alaska and felt that the specifications for such equipment were not well defined. As a result, Mr. Harms felt that Hy-Tech was not in a position to manufacture tanks that would satisfy the requirements for use in Alaska. Second, Mr. Harms explained that based on the standards he did feel were clear, the metal required for use in Alaska necessitated special heat treating. Mr. Harms informed Mr. O'Toole that Hy-Tech did not possess the required equipment to accomplish the heat treatment, and therefore could not produce tanks for use in Alaska. Mr. Harms went on to explain that in order to produce trucks with the special heat treated metal required for use in Alaska, the cost for those types of

trailers would range between $90,000.00 to $120,000.00. Hy-Tech sold its fracking trailers to Atigun for approximately one-third that amount.

Based on this information Mr. O'Toole informed Mr. Harms that he would pass Mr. Harms' information on to Mr. Olson who oversaw Atigun's operations in North Dakota. All future communications and business dealings were accomplished with Atigun via their North Dakota location. Additionally, all fracking tanks that Atigun purchased were delivered to their North Dakota location, and the Harms Defendants had no further involvement with Atigun in Alaska.

Since Mr. Harms specifically informed Atigun that Hy-Tech could not produce tanks for use in Alaska and all future dealing were with North Dakota, there is no reasonable way it can be argued that the Harms Defendants expressly aimed their activity at Alaska. Furthermore, the Harms Affidavit explains that neither Hy-Tech nor Tiger ever had an employee travel to Alaska, never solicited business in Alaska, never advertised in Alaska, and never sold or delivered any equipment to Alaska, or for use in Alaska. There simply is no basis to claim that the Harm Defendants directed any of their activities towards Alaska.

Atigun's Second Amended Complaint also fails to satisfy the third prong of the *Calder* effects test inasmuch as Atigun has failed to plead any damage in Alaska. The express language of the Second Amended Complaint states, "[a]fter receipt of the tanks, they were put to work in North Dakota. Subsequently, Atigun personnel noticed rust, missing welds and other exterior indicia of lack of quality in the construction in the tanks." *See* Second Amended Complaint, ¶16. Thus, the alleged damage occurred in

North Dakota, not in Alaska.  There is no other allegation that specifically claims Atigun has experienced any harm in Alaska.  As such, the final *Calder* element is not satisfied.

Mr. Harms' affidavit and the Second Amended Complaint demonstrate that Atigun has failed to satisfy the *Calder* effects test, and there is no basis for minimum contacts with Alaska.  As a result, this Court lacks personal jurisdiction over the Harms Defendants and must dismiss this case.

2) **The allegations contained in the Second Amended Complaint did not arise from forum-related activities.**

The second element of the *Pebble Beach* test requires that the claims arise from a defendant's forum related activities. *See Pebble Beach,* 453 F.3d at 1155.  "[T]he Ninth Circuit follows the 'but for' test."  *Myers v. Bennett Law Offices,* 2238 F.3d 1068, 1075 (9th Cir. 2001).  As a result, Atigun must show that it would not have suffered an injury "but for" the Harms Defendants' conduct.  *See Menken v. Emm,* 503 F.3d 1050, 1056 (9th Cir. 2007).  In this case the facts demonstrate that Atigun sought out the Harms Defendants, and that the Harms Defendants took no action that resulted in damage occurring in Alaska.

Atigun is the party who sought out the Harms Defendants.  The Harms Defendants took no action to reach out to Atigun in Alaska, and the only action taken by the Harms Defendants with respect to Alaska was to inform Atigun that the fracking tanks manufactured by Hy-Tech could not, and should not, be used in Alaska. Mr. Harms specifically informed Atigun that the fracking tanks manufactured by Hy-Tech would not

meet the requirements for use in Alaska, and that Hy-Tech did not have the necessary equipment and facilities to properly heat treat the metal for use in Alaska. Furthermore, the tanks that were manufactured for Atigun were delivered to North Dakota. The only actions taken by the Harms Defendants were actions to prevent Hy-Tech's products from being used in Alaska, not to promote their use in Alaska.

The only allegation that connects the Harms Defendants with Alaska is the telephone call initiated by Atigun wherein Atigun reached out to the Harms Defendants in Colorado. Even assuming *arguendo* that this telephone conversation constituted forum-related activities (which it does not), such negotiations cannot establish a basis for personal jurisdiction. As articulated in *Peterson v. Kennedy,* the "use of the mails, telephone or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." 771 F.2d 1244, 1246 (9th Cir. 1985). Any involvement with Alaska was unilaterally initiated by Atigun and pursuant to *Helicopteros* cannot be used as the basis for establishing personal jurisdiction.

### 3) It would be unreasonable to exercise personal jurisdiction over the Harms Defendants based on the facts of this case.

Since Atigun cannot establish the first two prongs of the *Pebble Beach* test, the burden of establishing a compelling case that the exercise of personal jurisdiction would be unreasonable does not pass to the Harms Defendants. However, out of an abundance

of caution the compelling case as to why the exercise of personal jurisdiction in this matter would be unreasonable is set forth below:

When making a determination as to whether or not an exercise of personal jurisdiction is reasonable, "Courts consider the following seven factors when making [the] determination: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *CE Distrib., LLC v. New Sensor Corp.,* 380 F.ed 1107, 1112 (9th Cir. 2004).

The bulk of the seven factors weigh in favor of declining to exercise personal jurisdiction in this matter. First, the Harms Defendants did nothing to interject themselves into Alaska's affairs. Atigun is the party that initially reached out to the Harms Defendants, and after the first interaction all further conduct was with Atigun in North Dakota, not Alaska. The second factor also weighs in favor of this Court declining jurisdiction. Alaska is at a fair distance from Colorado and North Dakota where the actions giving rise to this matter took place. It would be a hardship to require the Harms Defendants to travel to Alaska to adjudicate this matter. These unnecessary costs would increase once witnesses were required to testify in Alaska, as every non-Atigun witness is located in Colorado or North Dakota.

The third and fourth elements also weigh in favor of the Court declining to exercise jurisdiction. The extent of the conflict with Alaska is minimal. Atigun has explained in its own pleadings that the fracking tanks were put to work in North Dakota, not Alaska. The State of Alaska simply has no interest in adjudicating conduct that took place several thousand miles away.

Requiring the Harms Defendants to travel the several thousand miles would also be a waste of resources and would violate the fifth factor. The sixth and seventh factors also weigh in favor of the Court declining to exercise jurisdiction as North Dakota and Colorado offer much more convenient forums for this litigation. The bulk of, if not all, the activities took place in Colorado and North Dakota, providing a much more convenient forum, and Atigun conducts operations in North Dakota, so adjudicating the matter in North Dakota would essentially be no different for Atigun than adjudicating the matter in Alaska.

The facts and circumstances surrounding this case demonstrate that Colorado or North Dakota are much more logical locations to conduct this litigation. The *CE* factors also support the conclusion that this Court should decline to exercise jurisdiction.

**B. There is no basis for general jurisdiction over the Harms Defendants.**

"For general jurisdiction to exist over a nonresident defendant…, the defendant must engage in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." *Schwarzenegger,* 374 F.3d at 801 (citing *Helicopteros,* 466 U.S. at 416; and *Bancroft & Masters,* 223 F.3d at 1086). "To

determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, [the 9th Circuit] consider[s] their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.' The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *CollegeSource,* 653 F.3d at 1074 (internal citations omitted). Items relevant for consideration in making this determination include whether the defendant maintains an office in the state, is registered to do business in the state, has a registered agent in the state, or pays taxes in the state. *See Id.*

In this case there is no continuous and systematic presence by the Harms Defendants in Alaska. Hy-Tech and Tiger are Colorado limited liability companies, and their principal places of business were located in Fort Morgan, Colorado. Neither company has ever had an office or other physical location in Alaska, neither company has ever had an employee stationed in Alaska, neither company has ever advertised or solicited work in Alaska, neither company has ever sold or delivered equipment to Alaska, neither company has a registered agent in Alaska, and neither company has ever paid taxes in Alaska. Additionally, Mr. Harms is a resident of, and domiciled in, Colorado. As such, there is no basis for a claim that grounds exist for general jurisdiction over any of the Harms Defendants.

## II. This Case Should Be Dismissed for Improper Venue Pursuant to 28 U.S.C. § 1391.

Venue regarding diversity cases is governed by 28 U.S.C. § 1391(a) which states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Pursuant to 28 U.S.C. § 1406(a), once the Court determines that Alaska is not the proper venue, the Court should either dismiss the action or transfer the action to Colorado. *See* 28 U.S.C. § 1406(a). Case law supports the proposition that affidavits can be considered in making this determination. *See, e.g., Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 n.1 (9th Cir. 1967). The reason the legislature and courts require proper venue is to protect defendants from unfair, burdensome and/or inconvenient trial locations. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979).

In this matter, none of the defendants are located in Alaska. All of them are located in Colorado. As such, all of the Defendants are subject to jurisdiction in Colorado. These facts satisfy the first and third requirements of 28 U.S.C. § 1391(a) and support dismissal of this case, or at a minimum, a transfer to Colorado.

The only remaining factor that can make venue appropriate in Alaska is if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated" in Alaska. *See* 28 U.S.C. § 1391(a)(2). A "substantial part" does not require that the majority of the events occurred in the forum state, but it does require that at least some of the events giving rise to the claims occurred in the forum. *See Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000).

According to Atigun's own pleadings this is not the case. In paragraph 16 of the Second Amended Complaint Atigun specifically states that all of the fracking tanks "were put to work in North Dakota." This allegation alone, made by Atigun, demonstrates that the second factor of 28 U.S.C. § 1391(a) supports the position that venue should not be in Alaska. Further, Mr. Harms' affidavit outlines in detail the facts illustrating that all of the fracking tanks giving rise to this lawsuit were manufactured in Colorado, and delivered to North Dakota. The only event that connected the matter to Alaska was the phone call initiated by Atigun, wherein Mr. Harms informed Atigun that Hy-Tech could not manufacture fracking tanks for use in Alaska. This miniscule fact does not satisfy the "substantial" requirement when weighted against the construction and delivery of approximately 158 fracking tanks that all took place in Colorado and North Dakota, several thousand miles from Alaska.

III. Despite the claim that Atigun suffered financial injury in Alaska, the alleged failure of the fracking tanks took place in North Dakota, where Atigun set up and established operations. Atigun is licensed to do business in North Dakota, has a local office in Minot, North Dakota, and maintains a

registered agent there. It is much more logical to conclude that Atigun suffered the alleged financial harm in North Dakota than Alaska. Furthermore, apparently only one of the fracking tanks ever made its way to Alaska, and was never actually put in the field. As a result, the financial harm occurred in North Dakota, not Alaska, despite Atigun's contentions to the contrary. **The Misrepresentation Cause of Action Should Be Dismissed For Failure to Plead with Particularity.**

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, fraud and misrepresentation must be plead with specificity and particularity. *See* F.R.C.P 9(b) and *Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993). In order for a pleading containing allegations of fraud or misrepresentation the plaintiff must include information such as "time place and nature of the alleged fraudulent activities." *Semegen v. Weidner*, 780 F.3d 727, 735 (9th Cir. 1985).

Atigun has failed to meet this standard. The Second Amended Complaint only alleges that at an undisclosed time and location, the defendants provided a booklet that has not been identified, that allegedly contained representations that the fracking tanks were built to industry standards. The Second Amended Complaint goes on to allege that at other undisclosed times and places, Mr. Harms and other anonymous employees represented that the fracking tanks were built to specifications that also have not been disclosed. *See* Second Amended Complaint, ¶¶ 37-38. These vague allegations do not place the Harms Defendants in a position to adequately respond. Atigun failed to identify the individuals, other than Mr. Harms making the alleged representations, failed to identify the time when the alleged representations took place, failed to identify where the alleged representations took place, and failed to identify what the "industry standards"

that were allegedly represented. It should also be noted that this is the Second Amended Complaint, meaning that Atigun has already had three opportunities to comply with Rule 9, and has still failed to do so. As such, Atigun's cause of action for misrepresentation should be dismissed.

## IV. If This Case Is Not Dismissed In Its Entirety, Venue Should be Transferred to Colorado Pursuant to 28 U.S.C. § 1404(a).

In the event this Court determines that it has personal jurisdiction over the Harms Defendants, this matter should be transferred to the United States District Court for the District of Colorado. When making a determination as to whether venue should be altered,

> The court may consider: (1) the locations where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The Harms Defendants acknowledge they carry a heavy burden in making this request. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Despite this burden, the factors set forth above support a transfer to Colorado.

1) <u>Location where agreements were negotiated and executed.</u>

When analyzing this factor, it is important to remember that Atigun reached out to the Harms Defendants. The Harms Defendants took no action to contact Atigun in Alaska, nor did the Harms Defendants seek to negotiate contracts for services in Alaska. To the contrary, Mr. Harms specifically informed Mr. O'Toole that Hy-Tech could not manufacture products for use in Alaska. As a result, negotiations after the first initial call quickly transitioned to North Dakota, and all further negotiations were done between Colorado and North Dakota.

It also appears that there were no formal written contracts that were ever executed for the transactions between the Harms Defendants and Atigun. The business was conducted via purchase orders that were received in Colorado, bills of lading originating in Colorado for delivery of fracking tanks to North Dakota, and receipts that were executed in North Dakota. All of the activities leading to the formation of a contract took place in Colorado and North Dakota, as the only communication with Alaska resulted in no contract being created. These facts weigh heavily in favor of this case to be heard in Colorado.

2) <u>State most familiar with the governing law.</u>

This matter involves conduct that was performed in Colorado and North Dakota, with minimal, if any relevant conduct with Alaska. As a result, it is probable that the laws of all three states could be examined, but with the focus on Colorado and North Dakota. Further, this case centers on a breach of contract claim, with the contract being

formed as a result of conduct that took place in Colorado and North Dakota. While Alaska law may control regarding the misrepresentation claims, the bulk of the claims are still based on conduct that will be controlled by North Dakota and Colorado law. As a result, the balance tips in favor of transferring the matter to Colorado or North Dakota.

3) Plaintiff's choice of forum.

Atigun has chosen to litigate this matter in Alaska, which would weigh in favor of the case remaining in Alaska. However, since there is such a limited relationship between the allegations set forth in the Second Amended Complaint and Alaska, Atigun's choice of forum should be given limited weight. *See Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). Further, Atigun has established operations in North Dakota and could just have easily, and more properly, chosen to litigate in that forum.

4) Parties' contacts with the forum.

As argued through this memorandum, this factor weighs heavily in favor of transfer. None of the Defendants had any meaningful conduct with Alaska, and what contact did occur resulted in discontinuing further contact. Mr. Harms' communications with Alaska were limited to explaining that Hy-Tech could not manufacture products for Alaska. Atigun is the only party to this lawsuit with any meaningful contact with Alaska,

but this consideration is minimized because Atigun also has extensive contacts with Colorado and North Dakota.

Atigun initially reached out to the Harms Defendants in Colorado in an effort to establish a business relationship. When it became apparent that Atigun's Alaska operation could not establish that relationship, Atigun's North Dakota operations took over. Atigun's North Dakota operations then ordered over 150 fracking tanks from Hy-Tech establishing substantial contacts with Colorado. Further, Atigun has set up operations in North Dakota, maintains an office there, has a registered agent, and is licensed to do business there.

Since Atigun has extensive contacts with both Colorado and North Dakota, it would be completely appropriate to transfer this matter to either of those states, and such action would have little to no effect of prejudicing Atigun.

5) <u>Contacts relating to plaintiff's cause of action in the chosen forum.</u>

As articulated above, there is little if any connection between Atigun's claims and Alaska. The fracking tanks at issue were manufactured in Colorado and shipped to North Dakota. Then, pursuant to Atigun's own allegations, the fracking tanks were put to use in North Dakota, not Alaska. The conduct which has given rise to Atigun's allegations took place in Colorado and North Dakota, not Alaska. This factor weighs heavily in favor of transfer from Alaska.

6) <u>The difference in cost of litigating in the two forums.</u>

In this matter there are multiple parties located in Colorado, and just one party located in Alaska. This fact alone weighs in favor of transferring the matter to Colorado. Further, the majority of the fact witnesses will be located in Colorado, with the next most witnesses coming from North Dakota as this is where the majority, if not all, the conduct giving rise to this matter took place. The cost for both Plaintiff and the Defendants in this matter will be greatly reduced if the case is heard in Colorado, as opposed to Alaska. Since the majority of the witnesses are located in Colorado, travel costs will be greatly minimized. Further, it will be much more cost effective for any witnesses located in North Dakota to travel to Colorado, than to Alaska.

7) <u>Availability to compel attendance of unwilling non-party witnesses.</u>

The majority of the events giving rise to this matter took place in Colorado. As a result, the majority of the witnesses that will be providing testimony are located in Colorado. If any of the individuals are not parties to the lawsuit, compulsory attendance will not be available if the case is heard in Alaska. If witnesses are not available, this Court will have an extremely difficult time performing one of its majority functions, that of discovering the truth, and all parties will be prejudiced.

8) <u>Ease of access to proof.</u>

Once again the majority of the events giving rise to this case took place in Colorado. As such, it will be much easier to obtain the required evidence, and have that evidence presented in court, if the matter is heard in Colorado. Additionally, the second

most important location where events occurred is North Dakota.  North Dakota is much closer to Colorado, and presenting evidence located in North Dakota will be accomplished much easier if that evidence must be produced in Colorado rather than Alaska simply because of the geographic proximity of Colorado and North Dakota when compared with Alaska.

In addition to these eight factors, the *Jones* Court also instructed that forum selection clauses and public policy should be considered.  *See Jones*  211 F.3d at 498-99. In this matter there is no forum selection clause to consider.  With respect to public policy concerns, Alaska has a strong public policy in favor of protecting its citizens from misrepresentations.  However, Atigun has essentially deprived itself of this cause of action by failing to plead the alleged misrepresentation with particularity as required by Rule 9 of the Federal Rules of Civil Procedure.  Further, this case is primarily a contract case, which has its basis in Colorado.  Colorado also has a strong competing interest to protect the rights of its citizens.  As a result, the competing interests of Colorado and Alaska essentially cancel out one another, balancing the weight between the Plaintiff and Defendants.

In sum, the majority of the *Jones* factors require transferring the case to Colorado. The *Jones* factors that do not favor transfer are neutral.  Measuring all of the factors together, the overwhelming weight supports this case being transferred to Colorado, and such action would benefit all of the Defendants, and in many ways also benefit the Plaintiff.

## <u>CONCLUSION</u>

Based on the foregoing, the Harms Defendants respectfully request this Court grant their Motion to Dismiss this case in its entirety for lack of personal jurisdiction.  In the event this Court finds it has jurisdiction, the Harms Defendants request the Court dismiss the misrepresentation cause of action for failure to comply with the requirements of Federal Rule of Civil Procedure 9(b).  Also, if this Court determines it does have jurisdiction over the Harms Defendants, it is respectfully requested this action be transferred to the United States District Court for the District of Colorado.

DATED this 21st day of December, 2012.

WUESTENFELD & COREY, LLC


/s/ William M. Wuestenfeld
William M. Wuestenfeld, ASBA #8111139
701 W. 8th Avenue, Suite 1100
Anchorage, AK 99501
Phone:  (907) 276-6363
Fax:     (907) 276-3528
Email:  bill@swclaw.com
Attorney for Defendants

I hereby certify that on the
21st day of December, 2012, a copy
of the foregoing was served
electronically on:

Bruce A. Moore
Landye Bennett Blumstein LLP
701 West Eigth Avenue, Suite 1200
Anchorage, AK 99501
brucem@lbblawyers.com

Robert H. Schmidt
Landye Bennett Blumstein LLP
701 West Eigth Avenue, Suite 1200
Anchorage, AK 99501
robs@lbblawyers.com

Brewster H. Jamieson
Lane Powell LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, AK 99503
jamiesonb@lanepowell.com

Peter C. Partnow
Lane Powell LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, AK 99503
partnowp@lanepowell.com


/s/William M. Wuestenfeld