IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ATIGUN, INC.,<br><br>                     Plaintiff,<br>      v.<br><br>PREMIER OILFIELD EQUIPMENT COMPANY, et al.<br>                    Defendants. | Case No. 3:12-cv-00230-SLG |

**ORDER GRANTING MOTIONS TO TRANSFER VENUE**

Plaintiff Atigun, Inc. initiated this action in Alaska state court on July 26, 2012.[1] Defendant Premier Oilfield Equipment Company ("Premier") timely removed the case to the district court on November 16, 2012.[2] Before the Court at Docket 14 is Defendant Premier's Motion to Dismiss, or in the alternative, Motion to Transfer Venue.[3] The other Defendants, Tiger Oilfield Tank Company, LLC, Hy-Tech Truck & Trailer Manufacturing, LLC, and Gary Harms, Jr. (collectively "Harms Defendants") also filed a Motion to Dismiss, or in the alternative, Motion to Transfer Venue.[4] Atigun filed a consolidated opposition to both motions, to which the Defendants separately replied.[5] Oral argument on both motions was held on April 12, 2013. For the reasons set forth below, both of the alternative Motions to Transfer Venue will be granted, and this action will be transferred to the District Court for District of Colorado.

---

[1] Docket 9-2 (Compl.).

[2] Docket 1 (Notice of Removal).

[3] Docket 14 (Premier Mot.).

[4] Docket 15 (Harms Mot.).

[5] Docket 19 (Atigun Opp.); Docket 29 (Harms Reply); Docket 31 (Premier Reply).

## FACTUAL AND PROCEDURAL BACKGROUND

*I.     The Parties*

Atigun is an Alaska oilfield equipment rental company doing business in Alaska and North Dakota. Its main office is in Kenai, Alaska.[6]

Tiger Oilfield Tank Company ("Tiger") is a Colorado limited liability company that was originally formed in 2009 as Delta Oilfield Tank Co, LLC.[7] Tiger's principal place of business is in Fort Morgan, Colorado.[8] Tiger is engaged in the manufacture of miscellaneous oilfield equipment.[9] Hy-Tech Truck & Trailer MFG, LLC ("Hy-Tech") is also a Colorado limited liability company.[10] It was formed in 2010 to manufacture more specialized oilfield equipment.[11] Hy-Tech's principal place of business is also in Fort Morgan, Colorado, but it has had a different ownership and control group from Tiger and maintains separate facilities.[12] Neither Tiger nor Hy-Tech ever had offices in Alaska,

---

[6] Docket 9-7 at 3 ¶ 10 (Second Am. Compl.).

[7] Docket 14-1 at 1 ¶ 2 (Ex. A to Premier Mot: Harms Affdt.); Docket 9-7 at 2 ¶ 2 (Second Am. Compl.). Delta Tank changed its name to Tiger in 2010. Docket 14-1 at 1 ¶ 2.

[8] Docket 14-1 at 1 ¶ 2 (Harms Affdt.).

[9] Docket 14-1 at 1 ¶ 2 (Harms Affdt.).

[10] Docket 14-1 at 1 ¶ 3 (Harms Affdt.); Docket 9-7 at 2 ¶ 3 (Second Am. Compl.).

[11] Docket 14-1 at 1 ¶ 3 (Harms Affdt.).

[12] Docket 14-1 at 1 ¶ 3 (Harms Affdt.).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 2 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 2 of 15

never had employees that traveled to Alaska, and did not advertise in Alaska.[13] Neither entity ever had a registered agent in Alaska or paid taxes in Alaska.[14]

According to the affidavit of Ian Dickinson, the Chief Financial Officer for Premier, Premier is a Delaware corporation with its principal place of business in Fort Morgan, Colorado.[15] It was formed in March 2012 and acquired certain assets of Tiger, Hy-Tech, and Pro-Tech Fabricators, Inc.[16] Premier is engaged in the manufacture and sale of oilfield equipment, but it has different managers, shareholders, and directors than the companies it acquired.[17] Premier has no employees in Alaska, conducts no business in Alaska and does not solicit business in Alaska.[18] Premier has never sold any equipment to an Alaskan entity or for use in Alaska; it has no registered agent in the state and pays no taxes in Alaska.[19]

## II.  *Underlying Basis for the Action*

Many of the facts surrounding the underlying basis for the action are vigorously disputed. In support of their respective positions, Plaintiff and Defendants have each submitted affidavits. Analysis of a Rule 12(b)(2) or 12(b)(3) motion to dismiss permits

---

[13] Docket 14-1 at 2 ¶ 4 (Harms Affdt.). Defendants do not dispute that they maintained a website, which could be viewed from Alaska. *See* Docket 19-1 at 2-3 ¶ 5 (Ex. 1 to Opp.: Mike O'Toole Affdt.).

[14] Docket 14-1 at 2 ¶ 4 (Harms Affdt.).

[15] Docket 14-2 at 1 ¶ 4 (Dickinson Affdt).

[16] Docket 14-2 at 1 ¶ 2 (Ex. B to Premier Mot: Dickinson Affdt.).

[17] Docket 14-2 at 1 ¶ 3 (Dickinson Affdt).

[18] Docket 14-2 at 1 ¶ 5 (Dickinson Affdt).

[19] Docket 14-2 at 1 ¶ 6 (Dickinson Affdt).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 3 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 3 of 15

the district court to consider facts outside the pleadings. In the context of these motions, disputed facts must be viewed in the light most favorable to the non-moving party.[20] And the district court draws all reasonable inferences in favor of the non-moving party.[21]

Viewed from Plaintiff's perspective, the facts are as follows: Mike O'Toole, President of Atigun, contacted Gary Harms, then CEO of Tiger and Hy-Tech, by telephone from Alaska in 2010 to explore using Tiger as a possible manufacturer of fracking tanks for Atigun.[22] According to Mr. O'Toole, he learned about the Harms Defendants' tanks from Atigun's North Dakota-based general manager Jerry Olson.[23] Based on the phone conversations between Mr. O'Toole and Mr. Harms, Atigun personnel visits to Harms Defendants' facilities in Colorado, and email correspondence between the parties regarding billing, purchase orders, and invoices, Mr. O'Toole states there "is no doubt in my mind" that Mr. Harms knew he was selling frac tanks for Atigun's use in both Alaska and North Dakota.[24]

Atigun eventually ordered a total of 148 frac tanks and 8 "gas buster" tanks from the Harms Defendants by the end of 2011.[25] Mr. O'Toole stated that at Atigun's

---

[20] *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003); *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (internal citations omitted), cert. denied, 132 S. Ct. 1101 (2012).

[21] *Murphy*, 362 F.3d at 1138.

[22] Docket 19-1 at 2 ¶ 5 (Mike O'Toole Affdt.); Docket 14-1 (Harms Affdt.).

[23] Docket 19-1 at 2 ¶ 5 (O'Toole Affdt.).

[24] Docket 19-1 at 3 ¶ 6 (O'Toole Affdt.).

[25] Docket 19-1 at 5 ¶ 13 (O'Toole Affdt.); *also see* Docket 9-7 at 3 ¶ 11 (Second Am. Compl.); Docket 19-3 at 3 ¶ 8 (Jerry Olson Affdt.); Docket 14-1 at 3 ¶9 (Harms Affdt.) ("Atigun purchased

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 4 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 4 of 15

request, the Harms Defendants installed steam coils in the tanks designed specifically for use in Alaska. In addition, each tank was accompanied by a tank booklet, which Mr. O'Toole indicates are needed solely in Alaska so that state inspectors can determine if the tanks meet Alaska safety requirements.[26] The Harms Defendants delivered these tank booklets to Atigun's office in Kenai, Alaska.[27] In addition to the tank booklets and steam coils, the purchased tanks included other Alaska-specific features that Atigun requested from the Harms Defendants such as thief hatches, sealed manways, and permanent, in-place drip protection.[28]

The tanks were all delivered to Atigun's operations in North Dakota.[29] Atigun alleges the tanks were defective.[30] Atigun later brought one tank from North Dakota to

---

158 trailer-mounted fracking trailers"). Mr. Harms clarified that all of the trailer-mounted tanks at issue were manufactured in Colorado by Hy-Tech and were also purchased from Hy-Tech, as Premier was not formed until 2012 and "Tiger was engaged in the manufacture of round, stationary oilfield tanks and other equipment." Docket 14-1 at 2 ¶ 5 (Harms Affdt.).

[26] Docket 19-1 at 5 ¶¶ 14-16 (O'Toole Affdt.).

[27] Docket 19-1 at 5 ¶ 17 (O'Toole Affdt).

[28] Docket 19-3 at 4 ¶ 9 (Olson Affdt.). Defendants maintain that Mr. Harms informed Mr. O'Toole that Hy-Tech did not manufacture tanks to meet the Alaska specifications because it did not have the necessary equipment to do so. Docket 14-1 at 2-3 ¶ 7 (Harms Affdt.). Mr. Harms had previously researched whether Hy-Tech could make tanks suitable for use in Alaska after speaking with British Petroleum representatives located in Houston, Texas. Docket 31-2 at 1 ¶¶ 2-5 (Ex. D to Premier Reply: Second Harms Affdt.). He and his colleagues concluded that Hy-Tech did not have this capability. Docket 31-2 at 2 ¶¶ 7-10. Additionally, Defendants assert that the heat coils, thief hatches, sealed manways, and drip protection are "options . . . included on almost every frac trailer built by Hy-Tech, and are commonly used throughout the lower 48 states and the oil and gas industry." Docket 31-2 at 6 ¶ 31.

[29] Docket 9-7 at 3 ¶ 16 (Second Am. Compl.); Docket 14-1 at 3 ¶ 10 (Harms Affdt.); Docket 19-3 at 5 ¶ 13 (Olson Affdt.).

[30] Docket 14-1 at 3 ¶ 11 (Harms Affdt.); Docket 9-7 at 4 ¶¶ 16-17 (Second Am. Compl.).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 5 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 5 of 15

Alaska and rented it to a third party for use in Prudhoe Bay.[31] However, in May 2012, a private inspector inspected that tank and determined the coating and welds were inadequate. Thus, the inspector refused to certify the tank for use in Alaska and it was not able to be used for the planned rental.[32] Mr. Harms later founded Premier and tried to resolve the tank problems with Atigun.[33]

Atigun's Second Amended Complaint asserts claims for breach of contract, breach of warranty, breach of the implied covenant of good faith and fair dealing, rescission, misrepresentation, and unfair trade practices under AS § 45.50.471(a).[34]

## *DISCUSSION*

Both Premier and the Harms Defendants have filed motions to dismiss for lack of personal jurisdiction, or in the alternative, motions to transfer venue. Although personal jurisdiction is often addressed before venue, when "there is a sound prudential justification for doing so, … a court may reverse the normal order[.]"[35]

In this particular case, the determination of whether Alaska has personal jurisdiction depends on the resolution of factual disputes. It also involves other preliminary issues, including whether Premier is subject to the jurisdiction of this Court under a theory of successor liability. In determining these issues at the outset of the case, this Court is to view the disputed facts in the light most favorable to Plaintiff, the

---

[31] Docket 19-1 at 6 ¶19 (O'Toole Affdt.); Docket 19-3 at 5 ¶ 14 (Olson Affdt.).

[32] Docket 19-1 at 7 ¶ 24 (O'Toole Affdt.).

[33] Docket 19-1 at 7 ¶ 23 (O'Toole Affdt.).

[34] Docket 9-7 (Second Am. Compl.).

[35] *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 6 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 6 of 15

non-moving party. And yet, here the jurisdictional facts are both vigorously disputed and closely intertwined with the merits of this dispute. Further, at trial Plaintiff must still prove the necessary jurisdictional facts by a preponderance of the evidence.[36] If the evidence were ultimately to support Defendants' position on these disputed facts, (as to which this Court expresses no opinion at this time), then Alaska would not have personal jurisdiction over all Defendants, such that no judgment could be entered by this Court. These prudential considerations strongly support addressing venue first, as a decision to change venue would moot the personal jurisdiction analysis with respect to this Court.[37] Accordingly, this Court turns to an analysis of venue.

The applicable venue statute in this diversity action is 28 U.S.C. § 1391(b), which provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Alaska is not a proper venue for this action under either subsection (1) or (3) of this statute because none of the Defendants resides in Alaska, and both Colorado and

---

[36] *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) ("[A]t any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence.").

[37] *See, e.g. Basile v. Walt Disney Co.,* 717 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2010) (if personal jurisdiction with respect to at least some defendants may not be found, "it seems prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to this district irrelevant.").

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 7 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 7 of 15

North Dakota would be appropriate places where the action could be filed. Thus, the only possible basis for venue is subsection (2), which inquires whether a substantial part of the events giving rise to Atigun's claims took place in Alaska. Under Plaintiff's version of the facts, it would appear that it has met its burden to demonstrate that a substantial part of the events giving rise to these claims occurred here. But this Court need not make a determination that venue is proper in Alaska. Rather, this Court finds that even if venue is proper in this forum, the discretionary transfer of this case to Colorado is warranted.

Pursuant to 28 U.S.C. § 1404(a), this Court may discretionarily transfer an action to any other district where it might have been brought "[f]or the convenience of parties and witnesses." The Ninth Circuit instructs that a trial court "has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case'" basis, and may consider several factors including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing. [38]

The Ninth Circuit has "characterized *forum non conveniens* as, essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue

---

[38] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (quoting *Steward Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 8 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 8 of 15

when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined."[39] "Congress enacted § 1404(a) to permit change of venue between federal courts" so district courts "were given more discretion to transfer" under this section than previously allowed by the common law *forum non conveniens* doctrine.[40] However, a "defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."[41] Consideration of the applicable factors shows that Defendants have met that burden here.

### *i. Location where the relevant agreements were negotiated and executed*

Atigun learned about Defendants' products on its own and contacted Defendants, located in Colorado, for information about their products. Negotiations between the parties occurred by phone and email. Defendants were located solely in Colorado but Atigun had employees in both Alaska and North Dakota. Mr. Olson, an Atigun employee in North Dakota, made three to four visits to Colorado to view Defendants' facilities and discuss specifications. No formal written contract was signed by the parties, but Purchase Orders were sent from Plaintiff in Alaska to Defendants in Colorado. Payments were sent from Alaska to Defendants' bank in California. The bills of lading originated in Colorado for delivery of the tanks in North Dakota and Atigun signed receipt acknowledgments in North Dakota when the tanks arrived. The tank

---

[39] *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (internal citations and quotation marks omitted).

[40] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (internal citations omitted).

[41] *Sinochem*, 549 U.S. at 430.

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 9 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 9 of 15

booklets were sent to Alaska.  As no single place predominates as the location where the agreements were negotiated and executed, this factor is neutral.

*ii. The state that is most familiar with the governing law*

"A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."[42]  Thus, if this diversity case were transferred, the transferee court would apply the same law as the court in Alaska.[43]  Atigun has pleaded claims for breach of contract, breach of warranty, breach of the implied covenant of good faith and fair dealing, rescission, misrepresentation, and unfair trade practices under AS § 45.50.71.[44]  Atigun asserts that "[i]t is presumed that the law of contracts and warranties are the same or similar in Alaska, North Dakota and Colorado" but the unfair trade practices claim is based in Alaska law "and [the Complaint includes] allegations the tanks have failed strict inspection and construction requirements that are unique to Alaska."[45]  Given these Alaskan issues, this factor supports venue remaining in Alaska, albeit to only a minor degree.

---

[42] WRIGHT & MILLER, FED. PRAC. & P. § 3846 (3d ed.) (citing *Van Dusen v. Barrack*, 84 S.Ct. 805, 821 (1964)).

[43] *See id.* ("it is now well settled . . . that after a Section 1404(a) transfer on a defendant's motion of a case that had been brought properly in the transferor court, the transferee court will apply the law that would have been applied in the transferor court under the conflicts-of-laws rules of the state from which the action was transferred.").

[44] Docket 9-7 (Sec. Am. Compl.).

[45] Docket 19 at 24 (Opp.).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 10 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 10 of 15

*iii. Plaintiff's choice of forum*

Atigun chose to file this action in Alaska. This factor clearly weighs strongly against transfer.

*iv. The respective parties' contacts with the forum*

Atigun is an Alaska corporation with operations in Alaska and North Dakota. As an Alaska corporation, it has extensive contacts with this forum. Defendant Premier is a Delaware Corporation with its principal place of business in Colorado. Tiger and Hy-Tech are Colorado companies with their principal places of business in Colorado. Mr. Harms is an individual who resides in Colorado. Apart from this transaction, it appears that none of the Defendants have had any meaningful contact with Alaska. This factor is neutral for purposes of this venue analysis.

*v. The contacts relating to Plaintiff's claim in the chosen forum*

Atigun asserts that "[a]n essential component of Atigun's claim is that it purchased frac tanks that Defendants agreed to design and construct specifically for use in Alaska."[46] Atigun also maintains that the "tanks failed inspection for use in Alaska, the first inspection and notice to Defendants took place in Alaska, and Atigun has been required by those failures to purchase additional tanks to cover the needs of its customers in Alaska."[47] Assuming Plaintiff's facts are true for purposes of these motions, it is nonetheless undisputed that all the tanks were manufactured in Colorado, that Atigun representatives visited Defendants' facilities in Colorado to work on specifications, and that all the tanks were delivered to North Dakota. The tank that

---

[46] Docket 19 at 26 (Opp.).

[47] Docket 19 at 26 (Opp.).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 11 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 11 of 15

failed an inspection in Alaska was brought to Alaska by Atigun after it had been delivered to North Dakota. It is also undisputed that only one of the 156 tanks ordered was ever brought to Alaska. Thus, this factor supports transfer of this case to Colorado.

*vi. Cost differences of litigation in the two forums*

Atigun asserts that "[t]his factor is at best neutral." However, there are two sets of Defendants and each would bear the cost of having to litigate in Alaska. Thus, although Atigun would have to bear the cost of litigating outside of Alaska, litigation in Alaska would inconvenience more parties. This factor weighs slightly in favor of transfer.

*vii. Availability of compulsory process to compel attendance of unwilling non-party witnesses*

Atigun maintains that this factor is "neutral" because the "non-party witnesses are equally as likely to be located in Alaska as to be located in Colorado or North Dakota."[48] Atigun maintains that "Defendants' employees are not required to establish" facts that are "objectively observable by inspection," and asserts its inspector is located in Alaska.[49] Atigun also acknowledges that "Defendants arranged for an expert to travel to North Dakota," . . . but "that inspector was from a national service."[50] But both Premier and the Harms Defendants argue persuasively that the majority of the non-party

---

[48] Docket 19 at 27 (Opp.).

[49] Docket 19 at 27 (Opp.).

[50] Docket 19 at 27 (Opp.).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 12 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 12 of 15

witnesses, as well as the employee witnesses that manufactured the tanks, will be located in Colorado or in nearby North Dakota.[51] This factor weighs in favor of transfer.

*viii. Ease of access to sources of proof*

Atigun maintains that the "relevant documentation in this case is minimal by most standards" and most of these documents are electronically available. However, this case is focused on alleged problems with the tanks' manufacture. Given the location of the tanks in North Dakota, and their manufacture in Colorado, this factor supports transfer to Colorado.

*ix. Forum selection clause*

In this case, there was no contract with a forum selection clause, so this factor is not applicable.

*x. Public policy of the forum state*

Atigun asserts Alaska has a strong "public policy in favor of protecting its citizens from misrepresentation" and in "assuring that API Certification and tank booklets like those provided by Defendants in this case are accurate when they are relied upon in the oil and gas fields of Alaska."[52] Defendants contend that "the case is predominantly a contract action . . . and so Colorado has a competing interest in affording its citizens an efficient and convenient forum for resolution of disputes associated with contracts formed in Colorado."[53] As both states have an interest in resolving the business disputes of its residents, this factor is neutral.

---

[51] Docket 14 at 19 (Premier Mot.); Docket 15 at 26 (Harms Mot.).

[52] Docket 19 at 28 (Opp.).

[53] Docket 14 at 20 (Premier Mot.); Docket 15 at 27 (Harms Mot.).

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 13 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 13 of 15

*xi. Other Considerations*

The very different versions of the jurisdictional facts presented by the parties are closely intertwined with the underlying issue of whether the tanks were promised to be fit for use in Alaska or only in North Dakota. If after hearing the evidence at trial, Defendants' version of the jurisdictional facts were to prevail, then it may very well follow that the Defendants did not purposefully direct their activities to Alaska such that Alaska would not, at the end of the day, have personal jurisdiction over all of the Defendants, so as to preclude the entry of judgment by this Court.[54] This Court is expressing no view on the merits of this dispute at this time. But clearly such a result would not be in any party's interest. There are many neutral factors and Plaintiff's choice of forum must be accorded substantial weight. However, upon consideration of all the relevant factors, and given the highly disputed jurisdictional facts, the location of the majority of the disputed tanks, and the location of the manufacturing facility, this Court concludes a discretionary transfer of this action to Colorado is warranted.[55]

## ***CONCLUSION***

For the foregoing reasons, it is **HEREBY ORDERED:**

1. Defendants' alternative Motions to Transfer Venue at Docket 14 and 15 are GRANTED. The Motions to Dismiss are DENIED as moot.

---

[54] *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) ("[A]t any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence.").

[55] In their motions, Defendants have also challenged whether Atigun's misrepresentation claim is pled with the requisite particularity. As this Court has determined that transfer to another forum is warranted, it does not address the parties' arguments regarding the merits of this claim.

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 14 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 14 of 15

2. The Clerk of Court shall transfer this case to the District Court for the District of Colorado.

DATED at Anchorage, Alaska this 16th day of August, 2013.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

3:12-cv-230-SLG, *Atigun, Inc. v. Premier Oilfield Equipment Co.*, et al.
Order Granting Motions to Transfer Venue
Page 15 of 15
Case 3:12-cv-00230-SLG   Document 48   Filed 08/16/13   Page 15 of 15